DARREN S. ENENSTEIN (SBN 195894)
*dse@epggblaw.com*
MATTHEW W. ROSENE (SBN 294158)
*mrosene@epggblaw.com*
**ENENSTEIN PHAM GLASS GUTENPLAN & BOLLING LLP**
3200 Bristol Street, Suite 500
Costa Mesa, CA 92626
Telephone: (714) 292-0262

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

JESSICA MAH, an Individual; ANDREA BARRICA, an Individual; MAHWAY INCEPTION 1, LLC, a Delaware Limited Liability Company; MAHWAY INCEPTION 2, LLC, a Delaware Limited Liability Company; MAHWAY MANAGEMENT, LLC, a Delaware Limited Liability Company; MAHWAY INCEPTION II CLASS B HOLDINGS, LLC; a Delaware Limited Liability Company; and THORTUS LLC, a Delaware Limited Liability Company,

Plaintiffs,

v.

QUINN EMANUEL URQUHART & SULLIVAN, LLP, a California Limited Liability Partnership; ANTHONY ALDEN, an Individual; and ROBERT SCHWARTZ, an Individual,

Defendants.

Case No.:

**COMPLAINT FOR:**

1. **Breach of Fiduciary Duty;**
2. **Legal Malpractice;**
3. **Rescission;**
4. **Common Count for Money Had and Received;**
5. **Fraud;**
6. **Negligent Misrepresentation;**
7. **Violations of Business & Professions Code Section 17200 *et seq.*;**
8. **Civil RICO Violations (18 U.S.C. § 1961 *et seq.*); and**
9. **Conspiracy to Violate Civil RICO (18 U.S.C. § 1962 *et seq.*)**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This lawsuit arises from a law firm raking in $2.8 billion per year choosing to abandon its legal and ethical duties to bilk sexual assault victims. The conduct here is both appalling and repugnant. Specifically, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and partners Anthony Alden ("Alden") and Robert Schwartz ("Schwartz") deliberately hid the fact that Quinn Emanuel had previously represented Justin Caldbeck—the exact same individual who sexually assaulted plaintiffs Jessica Mah and Andrea Barrica. To make matters worse, Quinn Emanuel had defended Caldbeck **against the same types of claims of sexual abuse that Ms. Mah and Ms. Barrica alleged**.

2. Quinn Emanuel, Alden, and Schwartz made that choice deliberately—even though they knew that they were prohibited from doing so both by the ethical rules governing lawyers and basic human decency. They wanted to enrich themselves, and they did not care that they were not permitted to take on this representation. This fact is demonstrated by their subsequent conduct. Quinn Emanuel, Alden, and Schwartz immediately set about attempting to extract nearly $2 million in fees by improperly overworking matters while also exposing Ms. Mah and Ms. Barrica to serious prejudice in their lawsuits. Their performance not only displayed unconscionable greed—it called into question their loyalty to Ms. Mah and Ms. Barrica over their prior client—the man who sexually abused both women.

3. The rules governing Quinn Emanuel and its lawyers were clear—they were required to inform Ms. Mah and Ms. Barrica fully regarding the conflict and secure their informed consent to the conflict in writing. Rather than follow these clear rules, Quinn Emanuel affirmatively represented that there was no conflict.

4. In fact, Quinn Emanuel deliberately misled Ms. Mah by limiting its disclosure to merely mentioning in passing that Quinn Emanuel had once represented "Mr. Caldwell [sic] several years ago, but the matter seems to be unrelated and should not pose a problem for this one." In reality, Quinn Emanuel,

Alden, and Schwartz decided that it was appropriate to hide the fact that it had represented Ms. Mah and Ms. Barrica's sexual abuser in another case concerning remarkably similar claims of sexual abuse. In other words, Quinn Emanuel put profit before ethical duties to their clients.

5. Quinn Emanuel, Alden, and Schwartz knew that if they disclosed the true nature of the conflict and their prior representation of Caldbeck, then Ms. Mah and Ms. Barrica would have selected other counsel. Losing this matter would mean losing potential revenue—and they decided that the revenue mattered more than their ethical obligations. Accordingly, Quinn Emanuel never asked Ms. Mah or Ms. Barrica to waive the conflict. It never asked Caldbeck, its former client, to waive the conflict. Quinn Emanuel and its attorneys just sat back and allowed the issue to cause harm to their own clients.

6. Quinn Emanuel even instructed Ms. Mah's attorney of record "that [Quinn Emanuel's] role not be disclosed until the mediation" on the pretext "that Quinn Emanuel was recently retained." Revealing this at the mediation could surprise Caldbeck and the Quinn Emanuel name could make Caldbeck see that Ms. Mah meant business. Surreptitiously, it also allowed Quinn Emanuel to hide from Caldbeck, the firm's former client in sexual misconduct cases, that the firm represented Ms. Mah in the case against Caldbeck based on Caldbeck's sexual misconduct. This allowed Quinn Emanuel, Alden, and Schwartz to deliberately and unlawfully run up costs as high as they could as quickly as they could to maximize revenue before the inevitable disqualification.

7. Shortly after Caldbeck learned that Quinn Emanuel was representing Ms. Mah, Caldbeck unsurprisingly demanded in a letter that Quinn Emanuel withdraw as counsel for Ms. Mah and Ms. Barrica. Caldbeck warned that he would move to disqualify Quinn Emanuel if it did not voluntarily withdraw. Notably, even when faced by Caldbeck's demand, Quinn Emanuel still did not give its clients any analysis of its ethical obligations, the details of the conflict, or the likelihood of its

own disqualification. Instead, Quinn Emanuel realized its time on the matter was short and it focused on maximizing fees at the expense of two sexual assault victims.

8. Alden repeatedly told Ms. Mah that Quinn Emanuel's General Counsel was analyzing Caldbeck's disqualification argument, but neither Alden nor anyone else at Quinn Emanuel ever provided analysis to Ms. Mah or Ms. Barrica. In fact, Quinn Emanuel essentially ignored Caldbeck's initial demand to withdraw. Meanwhile, Quinn Emanuel continued to remit extraordinary legal bills for the cases against Caldbeck, knowing full well that neither Ms. Mah nor Ms. Barrica was properly informed of the conflict or that Quinn Emanuel would soon be disqualified.

9. Caldbeck filed motions to disqualify Quinn Emanuel as counsel for Ms. Mah and Ms. Barrica shortly thereafter. Quinn Emanuel did not provide Ms. Mah or Ms. Barrica with any written analysis of these motions or Caldbeck's arguments for disqualifying the firm.

10. Ms. Mah and Ms. Barrica learned about the conflict through Caldbeck's letter and the motions to disqualify Quinn Emanuel. Despite repeated claims that Quinn Emanuel's General Counsel was reviewing the motions to disqualify, no one at Quinn Emanuel gave Ms. Mah or Ms. Barrica any explanation or argument about why Caldbeck was wrong or why Quinn Emanuel was not conflicted and should not be disqualified. As such, Ms. Mah and Ms. Barrica understandably terminated Quinn Emanuel, Alden, and Schwartz as counsel. After all, Quinn Emanuel had not only breached its sacred fiduciary and ethical attorney-client obligations, but it had willingly revictimized both women while chasing the almighty dollar.

11. Rather than accept its mistake along with the $200,000 it had already received from Ms. Mah, Quinn Emanuel demonstrated its true values and demanded *another* $1,700,000. But the legal work was of such little value that a subsequent non-binding arbitration before a three-arbitrator panel found that "Quinn Emanuel left [Ms.] Mah in a worse position than she was before she retained the firm," "the quality of Quinn Emanuel's work does not justify its rates," its "billing was

unconscionable," and on those grounds struck nearly all the fees Quinn Emanuel demanded. Quinn Emanuel rejected that award.

12. Now, Ms. Mah and Ms. Barrica are forced to bring this suit. Having been victimized by Caldbeck, Ms. Mah and Ms. Barrica have now spent more than a year fighting a $2.8 billion legal behemoth that believes that it is not bound by the law or ethical rules governing attorneys. Quinn Emanuel, Alden, and Schwartz apparently believe it is okay to exploit victims to maintain a spot near the top of the Am Law 100 profits per equity partner ranking at more than $8.6 million in profits per equity partner in 2025.

13. This conduct is tortious and entitles Plaintiffs to legal relief that they should never have had to seek.

14. This conduct is also illegal in multiple respects. By violating its ethical duties to clients, Quinn Emanuel's engagement agreements are contrary to public policies, illegal, and unenforceable. Unfortunately, this conduct fits into Quinn Emanuel's established pattern of illegal and conflicted representation for which numerous Courts have chastised and punished Quinn Emanuel. Quinn Emanuel and a parade of attorneys have leveraged these ethical violations into a profitable enterprise extracting millions of dollars from clients through illegal contracts, wire fraud, mail fraud, and transportation of stolen money. This constitutes a pattern of racketeering activity the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1965 *et seq*) was meant to stop.

## THE PARTIES

15. Plaintiff Jessica Mah is an individual residing in New York, New York.

16. Plaintiff Andrea Barrica is an individual residing in the County of San Francisco, California.

17. Plaintiff Mahway Inception 1, LLC, is a Delaware limited liability company registered to do business in the State of California with its principal place of business in Los Angeles County.

18. Mahway Inception 2, LLC, is a Delaware limited liability company registered to do business in the State of California with its principal place of business in Los Angeles County.

19. Mahway Inception II Class B Holdings, LLC is a Delaware limited liability company registered to do business in the State of California with its principal place of business in Los Angeles County.

20. Plaintiff Mahway Management, LLC is a Delaware limited liability company registered to do business in the State of California with its principal place of business in Los Angeles County.

21. Plaintiff Thortus LLC is a Delaware limited liability company registered to do business in the State of California with its principal place of business in Los Angeles County.

22. Plaintiffs are informed and believe, and thereon allege, defendant Quinn Emanuel Urquhart & Sullivan, LLP is a California limited liability partnership engaged in the practice of law and doing business as Quinn Emanuel Trial Lawyers that maintains its office and principal place of business at 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

23. Plaintiff is informed and believes, and thereon alleges, defendant Athony Alden is an individual residing in Los Angeles County and an attorney licensed to practice law in California with California State Bar Number 232220 and is a partner in the law firm Quinn Emanuel.

24. Plaintiff is informed and believes, and thereon alleges, defendant Robert Schwartz is an individual residing in Los Angeles County and an attorney licensed to practice law in California with California State Bar Number 117166 and is a partner in the law firm Quinn Emanuel.

25. In this Complaint, Quinn Emanuel, Alden, and Schwartz are collectively referred to as “Defendants.”

26. Plaintiffs are informed and believe, and thereon allege, that Defendants,

and each of them, was at all times the agent, employee, co-conspirator, representative or alter ego of each of the remaining Defendants, and that each of the Defendants, committed such acts or omissions within the course and scope of such agency, servitude, employment, conspiracy, representation, or alter ego relationship with the full knowledge, consent, authority, and ratification of each of the other Defendants.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this matter due to the federal questions presented herein, including pursuant to the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1965 *et seq.*).

28. This Court has personal jurisdiction over the Defendants named herein as each performed acts which form the basis of Plaintiffs' claims, in the State or reside or are domiciled in the State.

29. Moreover, as the events giving rise to the claims herein occurred in the judicial district where this Court is situated, and as this District Court is situated in the district in which Defendants (who performed predicate acts identified under 18 U.S.C. § 1961 *et seq.*) all reside or are domiciled, venue is proper. *See* 28 U.S.C. § 1391(b).

30. Finally, this Court has supplemental jurisdiction over all State-based claims set forth herein, as such claims are so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy. *See* 28 U.S.C. § 1367. For example, and as set forth in greater detail below, Defendants' wire fraud, mail fraud, and transportation of stolen funds support both the predicate acts underpinning Plaintiffs' claims for civil RICO and conspiracy to commit civil RICO alleged herein as well as Plaintiffs' State-based claim for breach of fiduciary duty, legal malpractice and negligence, rescission, fraud, negligent misrepresentation, common counts for money had and received, and violations of the California Unfair Competition Law.

31. Similarly, the acts of individual Defendants, who owed fiduciary obligations to Plaintiffs, or who knew of the existence of these fiduciary duties, in perpetuating the RICO enterprise and racketeering activities and conspiring with other Defendants to carry out a fraud on the public, support the claim for violations of civil RICO, as well as Plaintiffs' State-based claims for violations of the California Unfair Competition Law, breach of fiduciary duty, legal malpractice and professional negligence, fraud, negligent misrepresentation, rescission, and common counts for money had and received.

## GENERAL ALLEGATIONS

### A. Justin Caldbeck Invested in One of the Entities Related to Ms. Mah

32. In early 2025, Jess Mah and entities she's involved with had a falling out with an investor, Justin Caldbeck. By that time, Caldbeck was well known in venture capital circles because, in 2017, six women asserted sexual harassment claims against Caldbeck, who then publicly admitted he had abused "his position of power in exchange for sexual gain" and had stepped away from the industry. Ms. Mah's dispute with Caldbeck started after he re-entered the venture capital industry in around 2022.

### B. Caldbeck Sexually Harassed and Assaulted Ms. Mah and Ms. Barrica and then Tried to Extort Them

33. On June 16, 2022, Caldbeck and Ms. Mah attended a business meeting at the restaurant at the Pendry Hotel in West Hollywood, California. During that lunch, Caldbeck consumed several alcoholic drinks. Afterwards, Caldbeck touched the uppermost part of Ms. Mah's thigh and put his hand next to her genitalia. Ms. Mah told Caldbeck to stop touching her, but she did not report this incident at the time because she was worried about the financial and reputational repercussions she might face.

34. Over the following months, Caldbeck insistently asked Ms. Mah if she was sexually or romantically interested in him. She unequivocally said, "no." Her

response did not change when Caldbeck offered to leave his wife and family to be with Ms. Mah.

35. During that same timeframe, Caldbeck routinely made inappropriate sexualized comments to Ms. Mah, including unsolicited and open discussions about his ongoing sexual relationships with other women and sexual acts.

36. In November 2022, Caldbeck and Ms. Barrica attended a business meeting. During that meeting, Caldbeck became heavily intoxicated.

37. After the meeting, Caldbeck and Ms. Barrica summoned an Uber to take them to their separate hotels. Once inside the car, Caldbeck tried to climb on Ms. Barrica and attempted to kiss her. He used his much larger frame and full body weight to force himself onto Ms. Barrica. Ms. Barrica repeatedly protested and had to use her full strength to push Caldbeck away.

38. Ms. Barrica immediately discussed this incident with her friends, but she did not report the incident because she was worried about financial and reputational harm she might face.

39. Within two years after making his investment in Inception 1, Caldbeck demanded that Ms. Mah restructure the company so that he could realize outsized, immediate profits.

40. In early 2025, Ms. Mah advised Caldbeck that she could not restructure Inception 1. Caldbeck did not like this response and he retaliated.

41. First, Caldbeck threatened Ms. Mah. He threatened to tell investors Ms. Mah had mismanaged the company and threatened to expose unspecified, but supposedly embarrassing, information he claimed to have obtained from Ms. Mah's former employees. He threatened to "destroy" Ms. Mah, stating he was "going to bankrupt" her.

42. Next, Caldbeck created from whole cloth stories about Ms. Mah that he told to investors, the SEC, and other government agencies. Caldbeck invented and shared with other investors patently false allegations that Ms. Mah had "a pattern

and history of embezzlement," he publicly accused Ms. Mah of fraud, and he created and spread false rumors that Ms. Mah and Ms. Barrica were in a sexual relationship with each other.

43. As Caldbeck's lies about Ms. Mah, Ms. Barrica and their businesses grew, so did his demands. Eventually, he demanded $2 million to go away—four times his initial investment.

### C. Ms. Mah and Her Entities Tried to Mediate the Dispute with Caldbeck, and Ms. Mah was Referred to Quinn Emanuel

44. In early 2025, when Ms. Mah and Caldbeck first engaged in mediation discussions and hired JAMS as the neutral, Ms. Mah was working with her attorney Greg Patterson. But Ms. Mah wanted a second opinion.

45. In late March 2025, a business contact named Alex Garden connected Ms. Mah her with Anthony Alden, a partner at Quinn Emanuel. More particularly, on March 30, 2025, Alex Garden, acting on behalf of Ms. Mah, contacted Alden at Quinn Emanuel to introduce Ms. Mah and to see whether Quinn Emanuel could help Ms. Mah.

46. That same day, Alden represented to Mr. Garden in an email that Quinn Emanuel, through "two … NorCal partners represented Mr. Caldwell [sic] several years ago, but the matter seems to be unrelated and should not pose a problem for this one."

47. Although Quinn Emanuel and Alden apparently recognized a potential conflict with a former client, neither Alden nor Quinn Emanuel asked Ms. Mah to provide informed written consent despite the significant risk Quinn Emanuel's representation of Plaintiffs would be materially limited by Quinn Emanuel's responsibilities to, or relationship with, its former client Caldbeck.

48. Later that day, Mr. Garden replied to Alden's email and copied Ms. Mah. That reply included Alden's representation about Quinn Emanuel previously representing Caldbeck in a supposedly "unrelated" matter.

49. Over the next few days, Ms. Mah talked to Alden and another partner at Quinn Emanuel, Robert Schwartz, about the representation, and on April 1, 2025, Ms. Mah executed an Engagement Agreement with Quinn Emanuel ("Original EA"). The Original EA defined the "Engagement" as Quinn Emanuel representing Ms. Mah, "Mahway Inception 1, LLC, and Mahway Management, LLC … in connection with disputes with Justin Caldbeck and D Global Ventures Fund 1 LLP."

50. The Original EA defined the "Scope of Engagement" as the "Engagement, which will include analyzing and conferring on strategy, undertaking factual and legal research, preparing for and attending a mediation, drafting a complaint, and prosecuting and/or defending claims against or by Justin Caldbeck and D Global Ventures Funds 1 LLP."

51. In the Original EA, Quinn Emanuel advised Ms. Mah of conflicts, including, that Quinn Emanuel "previously represented Mr. Caldbeck but believe the subject of that representation to be unrelated to the subject of the Engagement." Yet again, Quinn Emanuel and Alden recognized a potential conflict with Quinn Emanuel's former client Caldbeck, but neither Alden nor Quinn Emanuel asked Ms. Mah to provide informed written consent. In addition, neither Quinn Emanuel nor Alden advised Ms. Mah that Quinn Emanuel's representation of Caldbeck concerned the same or substantially related matters concerning Caldbeck's pattern of sexual misconduct.

52. Likewise, Quinn Emanuel and Alden failed to inform Ms. Mah of the risk of disqualification or the need to ask Caldbeck to give informed written consent to Quinn Emanuel's representation of Ms. Mah related to claims against Caldbeck based on his sexual misconduct.

53. The Original EA also included an attorneys' fees clause by which the prevailing party in any dispute is entitled to recover its attorneys' fees and costs:

> Notwithstanding anything to the contrary contained in this agreement, the prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement (for avoidance of doubt, a party that

> obtains a net monetary recovery shall be the prevailing party) will be awarded attorneys' fees and costs incurred in that arbitration, action or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by QEU&S attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by QEU&S to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator[.]

54. Ms. Mah paid Quinn Emanuel $200,000.00 as an advanced fee deposit.

55. On April 1, 2025, Quinn Emanuel attorneys started billing Ms. Mah, Mahway Inception 1, and Mahway Management for legal services.

**D. Quinn Emanuel Represented Ms. Mah at Mediation but Sought to Actively Hide that Fact from Caldbeck**

56. On April 18, 2025, Quinn Emanuel provided a draft mediation brief to Ms. Mah and Mr. Patterson, which draft included a footnote discussing Caldbeck's conduct: "Sadly, this is not the first time Mr. Caldbeck has engaged in such misconduct: in 2017, Mr. Caldbeck publicly admitted he had abused 'his position of power in exchange for sexual gain' after reporting revealed six women had accused him of sexual harassment." Of course, Quinn Emanuel knew this fact because it had represented Caldbeck defending against those claims.

57. When Quinn Emanuel finished Ms. Mah's mediation brief, Quinn Emanuel (through one of its attorneys working on behalf of the firm) sent an email to Ms. Mah's attorney of record for the mediation (Gregory Patterson) and copied to Alden and Schwartz with instructions that Quinn Emanuel "was recently retained to assistant [sic] Ms. Mah and Mahway ***and we would ask that their role not be disclosed until the mediation***."

58. On May 9, 2025, Ms. Mah and Caldbeck and their respective counsel participated in mediation in-person but were unsuccessful. They held remote follow-up sessions but were unable to resolve the dispute. Ms. Mah instructed Quinn Emanuel to advise the mediator (and Caldbeck) that Caldbeck should take Ms.

Mah's latest offer or Ms. Mah would sue Caldbeck for the sexual abuse she had experienced.

59. Despite post-mediation settlement negotiations, Ms. Mah's dispute with Caldbeck did not settle.

60. Quinn Emanuel accelerated the pace of its legal work, including drafting complaints against Caldbeck, despite the fact that such work repeated early tasks in an effort to increase fees and despite knowing it had failed to disclose a material conflict of interest. By way of example, Quinn Emanuel billed substantial hours after the mediation to draft a complaint for Ms. Mah against Caldbeck even though they had presented the draft complaint at mediation as leverage.

61. Starting on May 12, 2025, Quinn Emanuel attorneys started billing for legal services specific to Ms. Barrica

**E. Ms. Mah Filed Her Complaint Against Caldbeck**

62. On May 14, 2025, Quinn Emanuel filed a Complaint on behalf of Ms. Mah against Caldbeck, commencing the matter *Mah et al. v. Caldbeck*, Los Angeles Superior Court case No. 25SMCP00264 ("*Mah v. Caldbeck*").

63. The Complaint Quinn Emanuel drafted for Ms. Mah in *Mah v. Caldbeck* included allegations that "Defendant Jason [sic] Caldbeck is a predator. He is a sexual predator. He is a financial predator," that "during a business meeting, [Caldbeck] sexually assaulted Ms. Mah," and referred to Caldbeck as "a serial sexual harasser" based on the allegation that, "[i]n 2017, Mr. Caldbeck publicly admitted that he had abused his 'position of power in exchange for sexual gain,' but only after the press revealed that six women had accused him of sexual harassment. Reporting indicates that Mr. Caldbeck had engaged in similar misconduct during his tenure at Bain Capital and Lightspeed Venture Partners; at Lightspeed, his behavior apparently cost him his job."

64. In *Mah v. Caldbeck*, Ms. Mah asserted a claim against Caldbeck for sexual harassment in violation of California Civil Code § 51.9.

65. On or shortly after May 14, 2025, defendant Alden at Quinn Emanuel mentioned in passing on a phone call with Ms. Mah that Caldbeck might respond to the Complaint with an anti-SLAPP, although he did not explain what that meant or why it could be important.

66. Shortly after the Complaint was served on Caldbeck in the *Mah v. Caldbeck* matter, Quinn Emanuel, on behalf of Ms. Mah, served discovery on Caldbeck.

67. On May 15, 2025, Quinn Emanuel filed a complaint on behalf of Ms. Mah against Walter Delph, commencing the matter *Mah et al. v. Delph*, Los Angeles Superior Court case No. 25SMCV02552 ("*Mah v. Delph*"). In that case, Quinn Emanuel drafted a Complaint that alleges Delph "decided to conspire with Caldbeck, a disgruntled investor and serial sexual harasser … to 'shake down' Ms. Mah for a quick buck" as part of Caldbeck's defamation and extortion campaign against Ms. Mah.

68. In this Complaint, Quinn Emanuel repeated the statement that, "In 2017, Mr. Caldbeck publicly admitted he had abused his 'position of power in exchange for sexual gain' after reporting revealed six women had accused him of sexual harassment."

69. Quinn Emanuel generated its first invoice related to representing Plaintiffs against Caldbeck on or around May 16, 2025, and identified it as "Matter #: 13811-000001."

**F. Quinn Emanuel's Representation Expands to Include Ms. Barrica's Claims Against Caldbeck for Sexual Harassment**

70. On May 19, 2025, Quinn Emanuel and Plaintiffs entered into a revised Engagement Agreement ("Revised EA") that expanded to include Quinn Emanuel representing Ms. Barrica in her complaint against Caldbeck for sexual harassment and related claims and representing a variety of business entities related to Ms. Mah.

71. The Revised EA defined the "Engagement" as Quinn Emanuel

representing Ms. Mah; "Mahway Inception 1, LLC; Mahway Management, LLC; Mahway Inception 2, LLC; Mahway Inception II Class B Holdings, LLC; Mahway Investment Group, LLC; Mahway Consulting LLC; Mah Family IDF; and Thortus LLC … and Andrea Barrica in connection with the disputes with Justin Caldbeck, D Global Ventures Fund 1 LLP, Walter Delph, William Mulholland and Travis Saville."

72. The Revised EA defined the "Scope of Engagement" as the "Engagement, which will include analyzing and conferring on strategy, undertaking factual and legal research, preparing for and attending a mediation, drafting a complaint, and prosecuting and/or defending claims against or by Justin Caldbeck, D Global Ventures Funds 1 LLP, Walter Delph, William Mulholland, and Travis Saville."

73. The Revised EA included the same "conflict" disclosure that Quinn Emanuel "previously represented Mr. Caldbeck but believe the subject of that representation to be unrelated to the subject of the Engagement."

74. Like the Original EA, the Revised EA included an attorneys' fees clause by which the prevailing party in any dispute is entitled to recover its attorneys' fees and costs:

> Notwithstanding anything to the contrary contained in this agreement, the prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement (for avoidance of doubt, a party that obtains a net monetary recovery shall be the prevailing party) will be awarded attorneys' fees and costs incurred in that arbitration, action or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by QEU&S attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by QEU&S to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator[.]

75. Although Quinn Emanuel and Alden again recognized a potential

conflict with Quinn Emanuel's former client Caldbeck, neither Alden nor Quinn Emanuel asked any of the Plaintiffs to provide informed written consent.

76. In addition, neither Quinn Emanuel nor Alden advised any of the Plaintiffs that Quinn Emanuel's representation of Caldbeck concerned the same or substantially related matters concerning Caldbeck's pattern of sexual misconduct.

77. Neither Quinn Emanuel nor anyone acting on its behalf asked Plaintiffs to sign a waiver of conflict.

78. Neither Quinn Emanuel nor anyone acting on its behalf advised that Quinn Emanuel or Alden had asked or would ask Caldbeck to give informed written consent to Quinn Emanuel's representation of Plaintiffs related to claims against Caldbeck related to his sexual misconduct.

79. On May 20, 2025—one day after the Revised EA—Quinn Emanuel filed a Complaint on behalf of Ms. Barrica against Caldbeck, commencing the matter *Barrica et al. v. Caldbeck*, Los Angeles Superior Court case No. 25STCV14801 ("*Barrica v. Caldbeck*"). Quinn Emanuel drafted and filed the *Barrica v. Caldbeck* Complaint, which detailed Ms. Barrica's sexual harassment claims against Caldbeck, including a sexual assault in a ride-share after a business meeting.

80. In *Barrica v. Caldbeck*, Ms. Barrica asserted a claim against Caldbeck for sexual harassment in violation of California Civil Code § 51.9.

81. Before Quinn Emanuel sent Plaintiffs the Revised EA for review and signature, it had already billed over fifty hours for drafting and revising Ms. Barrica's complaint against Caldbeck.

82. On May 20, 2025, Quinn Emanuel filed a Complaint on behalf of Ms. Mah against William Mulholland, commencing the matter *Mah et al. v. Mulholland*, Los Angeles Superior Court case No. 25SMCV14815 ("*Mah v. Mulholland*"). In that case, Quinn Emanuel drafted a Complaint that alleges Mulholland "decided to conspire with Justin Caldbeck—a disgruntled investor and serial sexual harasser—

… to 'shake down' Ms. Mah for a quick buck" as part of Caldbeck's defamation and extortion campaign against Ms. Mah.

**G. Quinn Emanuel Charged Plaintiffs for "SEC Advice" Under a Different Client Number**

83. In mid-May 2025, Quinn Emanuel started billing Plaintiffs for work it labeled as "SEC Advice," but for which the invoices stated was "in connection with disputes with Justin Caldbeck and D Global Ventures Fund 1 LLP."

84. Quinn Emanuel never provided Plaintiffs with a separate engagement agreement specific to SEC advice, nor did the Original EA or Revised EA mention any work related to the SEC. Nonetheless, starting on or around May 19, 2025, Quinn Emanuel started billing Plaintiffs for "SEC Advice" under a different matter number, "Matter #: 13811-000001A," and generating separate invoices for this work.

**H. Quinn Emanuel's Conflict Regarding Caldbeck Moves to the Forefront**

85. On June 4, 2025, Caldbeck's attorneys in the *Mah v. Caldbeck* matter sent a letter to Quinn Emanuel advising that Quinn Emanuel had a conflict of interest representing Ms. Mah and Ms. Barrica in the *Mah v. Caldbeck*, *Barrica v. Caldbeck*, *Mah v. Mulholland*, and *Mah v. Delph* matters ("Conflict Letter"). In the Conflict Letter, Caldbeck's counsel highlighted that Quinn Emanuel had previously represented Caldbeck in sexual harassment cases, including "disputes from 2017" that "feature prominently in both complaints"—*i.e.*, the *Mah v. Caldbeck* matter and the *Barrica v. Caldbeck* matter. In the Conflict Letter, Caldbeck's counsel also pointed out that the complaints in *Mah v. Delph* and *Mah v. Mulholland* featured the 2017 allegations against Caldbeck.

86. Quinn Emanuel provided the Conflict Letter to Ms. Mah and Plaintiffs, but neither Quinn Emanuel nor any of its attorneys advised Plaintiffs about the potential repercussions of Quinn Emanuel's conflict of interest based on Quinn

Emanuel previously representing Caldbeck related to the sexual harassment claims from 2017.

87. Likewise, Quinn Emanuel did not advise Ms. Mah or Plaintiffs to seek an independent legal opinion about the Conflict Letter or the issues raised in it.

88. Instead, Alden and Schwartz chose to abuse the trust placed in them by Ms. Mah and Plaintiffs. Alden and Schwartz told Ms. Mah over the phone that Quinn Emanuel's attorneys were reviewing the potential conflict issues, but that Plaintiffs did not need to worry about Quinn Emanuel being disqualified as counsel for Ms. Mah or any of the Plaintiffs.

**I. Quinn Emanuel Warns Ms. Mah of "Sticker Shock" for the Invoice She Was About to Receive**

89. On June 13, 2025, Ms. Mah participated in a call with Schwartz of Quinn Emanuel. During this call, Schwartz advised Ms. Mah that she was going to have "sticker shock" at Quinn Emanuel's invoice for May 2025. She did.

90. Quinn Emanuel emailed Ms. Mah an invoice for $632,610.09 for Quinn Emanuel's work in May 2025. After receiving that invoice, Ms. Mah talked to her attorneys at Quinn Emanuel on June 19, 2025, to discuss the obscene amount of Quinn Emanuel's fees.

91. On June 23, 2025, Quinn Emanuel sent to Ms. Mah for the first time an Attorneys' Fees and Costs Estimate for Quinn Emanuel's expected cost to litigate the dispute. Quinn Emanuel estimated that it would cost between $3,436,987 and $3,980,073 to litigate the dispute, incurred at $250,000 to $300,000 per month.

92. Ms. Mah told Quinn Emanuel, "we need to slow our roll right now and just let the jets cool across the board. We don't push harder on the discovery or reach out more right now to just let everything sink in."

93. Ms. Mah followed up with another email summarizing, "my goal still remains to settle this out so we can put it behind us and move on with our lives. As much as I want to take this all the way, and as much as we need to posture in that

direction, I don't want to spend millions of dollars and I don't want to have this drag on for years if we can figure out an offramp sooner. That's why I think once it's clear that Caldbeck's case lives in arbitration, it's a good time for us to start discussing a settlement again."

94. Regardless, starting in June 2025, Quinn Emanuel staffed attorneys based in its Washington, D.C., New York, and Zurich, Switzerland offices on Plaintiffs' case, including associate attorney Kristin Casey in the Washington, D.C. office; partner Sarah H. Concannon in Washington, D.C. and New York offices; associate attorney Ariane Machavoine in the Zurich office; counsel Pierre-Yves Marro in the Zurich office; partner Simon Vorburger in the Zurich office; and partner Kurt Wolfe in the Washington, D.C. office.

**J. Quinn Emanuel's Conflict Regarding Caldbeck Moves Back into the Spotlight**

95. On June 26, 2025, Caldbeck filed a Motion to Disqualify Quinn Emanuel as counsel for Ms. Mah in *Mah v. Caldbeck* and a Motion to Disqualify Quinn Emanuel as counsel for Ms. Barrica in *Barrica v. Caldbeck*.

96. Like in the June 4, 2025 Conflict Letter, Caldbeck detailed that Quinn Emanuel represented him related to allegations of sexual harassment asserted against him in 2017, and that the 2017 allegations were the basis in Ms. Mah's and Ms. Barrica's Complaints that Caldbeck is a "serial sexual harasser."

97. According to Caldbeck's Motion to Disqualify, Caldbeck hired Quinn Emanuel and Dianne Doolittle, a partner in Quinn Emanuel's Silicon Valley office, to represent him in 2017 to defend him against allegations of sexual harassment by limited partners in two venture funds and "Caldbeck spent significant time with Quinn Emanuel on the matter, working with them on media strategy, communications with accusers, communications with the limited partners, and defense of the arbitrations that stemmed from the accusations." Per Caldbeck, "Caldbeck's work with [Quinn Emanuel] revolved around these allegations of sexual

harassment."

98. In his Motion to Disqualify, Caldbeck pointed out that the Complaint in *Mah v. Caldbeck* "relies heavily on allegations of 'a pattern of behavior' with respect to alleged sexual harassment throughout. … The discovery served by [Ms. Mah] in this action also seek evidence regarding past allegations, including documents that would presumably be in [Quinn Emanuel]'s possession."

99. Caldbeck's Motion to Disqualify also pointed out that the discovery Quinn Emanuel served on behalf of Ms. Barrica in the *Barrica v. Caldbeck* case sought discovery asking Caldbeck "to identify all persons who have ever made a complaint of sexual misconduct against him," "to describe the substance of each complaint," and "to describe all communications with five past accusers," which accusers and complaints "prompted Caldbeck to approach and hire Quinn Emanuel in 2017."

100. Caldbeck argued that Quinn Emanuel violated the Rules of Professional Conduct and the "duties of loyalty and of confidentiality" Quinn Emanuel owes to Caldbeck "preclude [Quinn Emanuel] from representing" Ms. Mah, Ms. Barrica, and the entities associated with them.

101. Quinn Emanuel sent the motions to Ms. Mah and told her that Caldbeck had scheduled the hearings four months out, but Quinn Emanuel did not provide substantive analysis of Caldbeck's arguments at that time or ever.

102. Indeed, Quinn Emanuel never provided any written guidance or analysis to Plaintiffs addressing Caldbeck's claims that Quinn Emanuel was conflicted, Caldbeck's demands that Quinn Emanuel withdraw as counsel for Plaintiffs, or Caldbeck's argument that Quinn Emanuel would be disqualified as counsel for Plaintiffs.

103. Instead, on June 26, 2025, Alden advised Ms. Mah that Quinn Emanuel's "general counsel is analyzing." Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel's general counsel at that time was Harry A.

Olivar, Jr. Regardless, on June 28, 2025, Alden told Ms. Mah that despite Caldbeck's Motion to Disqualify in the *Mah v. Caldbeck* and *Barrica v. Caldbeck* matters, "everything should proceed as if the motions had not been filed."

**K. Plaintiffs Sought an Independent Review of the Conflict Issue**

104. On June 27, 2025, Ms. Mah advised attorneys at Quinn Emanuel that Mr. Patterson was getting involved again.

105. Ms. Mah and Ms. Barrica sought independent review of the Conflict Letter and Caldbeck's Motion to Disqualify Quinn Emanuel in the *Mah v. Caldbeck* and *Barrica v. Caldbeck* cases. But Quinn Emanuel still failed to provide any substantive response or argument related to Caldbeck's Conflict Letter and his Motions to Disqualify and Quinn Emanuel did not try to convince Plaintiffs that they did not have a conflict of interest or that Caldbeck was wrong on any of the facts or arguments presented in the letter or motions.

106. On July 12, 2025, Quinn Emanuel advised Ms. Mah: "Not surprisingly, Caldbeck has filed anti-SLAPP motions against your complaints. … Let us know if you'd like us to review and offer our thoughts." But this was a surprise to Ms. Mah. Indeed, this was the first time anyone at Quinn Emanuel sent anything to Ms. Mah in writing about anti-SLAPP and its potential application to the complaints Ms. Mah and Ms. Barrica filed against Caldbeck.

107. As July 2025 wore on, Ms. Mah and Ms. Barrica continued to ask Quinn Emanuel lawyers about the conflict issues Caldbeck raised in his letter and motions, but they never received a substantive response. Instead, Quinn Emanuel lawyers deflected and claimed general counsel was looking into it.

108. At the end of July 2025, Quinn Emanuel still had not provided a substantive response regarding the Caldbeck conflicts and Ms. Mah advised Quinn Emanuel that the case would be transferred back to Mr. Patterson. Starting on or around July 22, 2025, Alden started emailing Ms. Mah and Mr. Patterson regarding Mr. Patterson substituting as counsel.

109. Regardless, Quinn Emanuel continued to invoice under two separate matter numbers, with Quinn Emanuel's September 9, 2025 invoice in the Caldbeck matter showing Quinn Emanuel continued to bill Ms. Mah through August 25, 2025.

110. On September 15, 2025, Quinn Emanuel sent a letter to Plaintiffs in which Quinn Emanuel claimed Plaintiffs owed Quinn Emanuel $1,707,181.96 and demanded payment in full.

111. That September 15, 2025 demand from Quinn Emanuel was the balance left after Quinn Emanuel applied the $200,000.00 advance fee deposit Ms. Mah made months earlier.

112. Ms. Mah advised that Plaintiffs was not going to pay Quinn Emanuel the $1,707,181.96 the firm demanded, and Quinn Emanuel forced the issue into fee arbitration with the Los Angeles County Bar Association's Mandatory Fee Arbitration program. Plaintiffs incurred approximately $75,975 with new counsel in the mandatory fee arbitration.

113. With new counsel, Ms. Barrica still lost the anti-SLAPP claim as to her extortion claim against Caldbeck in the *Barrica v. Caldbeck* matter. Ms. Barrica was found liable for $27,000 of Caldbeck's legal fees related to his anti-SLAPP motion against the Complaint Quinn Emanuel drafted and filed.

114. With new counsel, Ms. Mah was forced to litigate the issues raised in Caldbeck's anti-SLAPP in the *Mah v. Caldbeck* matter. Plaintiffs, including Ms. Mah and Ms. Barrica, incurred approximately $211,804.00 litigating against the anti-SLAPP motions and related fee requests filed by Caldbeck in *Mah v. Caldbeck* and *Barrica v. Caldbeck*, which cases were both based on complaints Quinn Emanuel drafted and filed in those cases.

### L. Quinn Emanuel and the Enterprise Knowingly Engaged in Conflicted Representation in Violation of the Rules of Ethics by Which the Enterprise Established a Pattern of Racketeering

115. Plaintiffs are informed and believe, and thereon allege, that Quinn

Emanuel, Alden, Schwartz, Casey, Concannon, Machavoine, Marro, Vorburger, Wolfe, Olivar, Christopher Tayback, Diane Doolittle, Hope Skibitsky, Renita Sharma, Corey Worcester, and Adam Wolfson (collectively, the "Enterprise") acted in concert for the benefit of one another and the Enterprise.

116. Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel and the individual members of the Enterprise, through unauthorized transfers, transferred from accounts in California to accounts in New York, Washington, D.C., and Zurich, Switzerland, some or all of the $200,000.00 advance fee deposit Ms. Mah paid to Quinn Emanuel.

117. Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel and each of the members of the Enterprise are not entitled to any of the $200,000.00 deposit because their conflicted representation of Plaintiffs renders the Original EA and Revised EA illegal and void. Thus, Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel was obligated to return the $200,000.00 fee deposit to Ms. Mah but has failed and refused to do so and thus has stolen money belonging to Ms. Mah.

118. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Alden, Schwartz, Doolittle, Olivar, Tayback, Casey, Concannon, Machavoine, Pierre-Yves Marro, Vorburger, and Wolfe intentionally represent clients in matters in which they are conflicted from representation under the applicable ethics rules, including under the California Rules of Professional Conduct without obtaining, or even attempting to obtain, the required informed written consent of the clients and former clients.

119. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Alden, Schwartz, Doolittle, Olivar, and Tayback knew that Quinn Emanuel was conflicted from representing Ms. Mah, Mahway Inception 1, LLC and Mahway Management LLC at the time the Original EA was executed based on Quinn Emanuel's prior representation of Caldbeck

regarding his pattern of sexual harassment and sexual impropriety.

120. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Alden, Schwartz, Doolittle, Olivar, and Tayback knew that Quinn Emanuel was conflicted from representing Plaintiffs at the time the Revised EA was executed based on Quinn Emanuel's prior representation of Caldbeck regarding his pattern of sexual harassment and sexual impropriety.

121. Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel repeatedly and consistently engage in conflicted representation despite the express prohibitions against this practice and despite those members of the Enterprise, including Quinn Emanuel, Alden, Schwartz, Doolittle, Olivar, and Tayback knew Quinn Emanuel was conflicted from representation.

122. Quinn Emanuel and Alden twisted themselves further into a conflicted knot after Plaintiffs fired Quinn Emanuel, Alden, and Schwartz. More specifically, plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel failed to notify Plaintiffs that Quinn Emanuel and Alden were representing one of Plaintiffs' former business partners in a dispute against Plaintiffs. But they did not obtain—let alone request—written consent from Plaintiffs. Indeed, Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel and Alden took affirmative steps to hide this representation from Plaintiffs.

***1. Quinn Emanuel and the Enterprise Knowingly Represented a Client Against its Former Client, Uber Technologies, Inc., in a Substantially Related Matter***

123. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Olivar, and Tayback knew that Quinn Emanuel was conflicted from representing claims against Uber Technologies, Inc. after the firm had defended Uber Technologies, Inc. in sixteen to twenty unfair-competition cases from 2012–2016.

124. Plaintiffs are informed and believe, and that basis allege, that Quinn

Emanuel represented SC Innovations, Inc. in an antitrust/unfair-competition suit against Uber Technologies, Inc. in the matter *SC Innovations, Inc. v. Uber Technologies, Inc.,* 434 F. Supp. 3d 782 (No. 3:18-cv-07440-JCS) in the U.S. District Court, N.D. Cal. ("*SCI v. Uber*").

125. Plaintiffs are informed and believe, and thereon allege, that in *SCI v. Uber*, Uber moved to disqualify Quinn Emanuel on the grounds that *SCI v. Uber* was substantially related to Quinn Emanuel's prior representation of Uber in unfair competition cases which exposed the firm to Uber's confidential information.

126. Plaintiffs are informed and believe, and thereon allege, that the Court in the Northern District of California in the *SCI v. Uber* granted the motion to disqualify Quinn Emanuel based on a conflict arising from prior representation.

127. Plaintiffs are informed and believe, and thereon allege, that the court's ruling disqualifying Quinn Emanuel in *SCI v. Uber* rendered Quinn Emanuel's engagement agreement with SCI illegal and unenforceable.

### ***2. Quinn Emanuel and the Enterprise Knowingly Represented a Client Against its Former Client, Bright Data Ltd., in a Substantially Related Matter***

128. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Skibitsky, Sharma, Worcester, Wolfson, Olivar, and Tayback knew that Quinn Emanuel was conflicted from representing claims against Bright Data Ltd. after the firm had represented Bright Data Ltd. in early 2023 defending its data-scraping business model conduct.

129. Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel represented X Corp. in a lawsuit against Bright Data Ltd. over data-scraping conduct in *X Corp. v. Bright Data Ltd.*, No. 3:23-cv-03698-WHA, U.S. District Court, N.D. Cal. ("*X v. Bright Data*").

130. Plaintiffs are informed and believe, and thereon allege, that in *X v. Bright Data*, Bright Data moved to disqualify Quinn Emanuel on the grounds that *X*

*v. Bright Data* involved data-scraping conduct that was substantially related to the data-scraping conduct for which Quinn Emanuel represented Bright Data in prior proceedings, including through Quinn Emanuel attorneys Skibitsky, Sharma, Worcester, and Wolfson, among others.

131. Plaintiffs are informed and believe, and thereon allege, that the Court in *X v. Bright Data* (Judge Alsup), granted the motion to disqualify Quinn Emanuel for breaching its duty of loyalty based on the conflicted representation of a former client.

132. Plaintiffs are informed and believe, and thereon allege, that the court's ruling disqualifying Quinn Emanuel in *X v. Bright Data* rendered Quinn Emanuel's engagement agreement with X Corp. illegal and unenforceable.

### ***3. Quinn Emanuel and the Enterprise Knowingly Represented a Client Against its Current Client, CoStar Group, Inc., in Another Pending Matter***

133. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Olivar, and Tayback knew that Quinn Emanuel was conflicted from representing claims against CoStar Group, Inc. while the firm also represented CoStar Group, Inc. in a separate employment case.

134. Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel represented CoStar Group, Inc. in an employment case in the United States District Court for the Northern District of California (*i.e.*, *Kutagula v. Matterport/CoStar*), while simultaneously representing Commercial Real Estate Exchange, Inc. (CREXi) in *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc. (CREXi)*, U.S. District Court, C.D. Cal. Case No. 2:20-cv-08819 ("*CoStar v. CREXi*").

135. Plaintiffs are informed and believe, and thereon allege, that in *CoStar v. CREXi*, CoStar moved to disqualify Quinn Emanuel as counsel for CREXi on the grounds that Quinn Emanuel simultaneously represented CoStar in *Kutagula v.*

*Matterport/CoStar*, which made Quinn Emanuel adverse to CoStar without CoStar's informed consent.

136. Plaintiffs are informed and believe, and thereon allege, that the Court in *CoStar v. CREXi*, Judge Consuelo B. Marshall, granted CoStar's motion to disqualify Quinn Emanuel for being adverse to CoStar—a current client of Quinn Emanuel—in another matter.

137. Plaintiffs are informed and believe, and thereon allege, that the court's ruling disqualifying Quinn Emanuel in *CoStar v. CREXi* rendered Quinn Emanuel's engagement agreement with CREXi illegal and unenforceable.

***4. Quinn Emanuel and the Enterprise Knowingly Represented a Client Against its Former Client, Joe Kiani, in a Substantially Related Matter***

138. Plaintiffs are informed and believe, and thereon allege, that the Enterprise, including Quinn Emanuel, Olivar, and Tayback knew that Quinn Emanuel was conflicted from representing claims against Joe Kiani (a founder of Masimo) while the firm had previously represented Kiani.

139. Plaintiffs are informed and believe, and thereon allege, that Quinn Emanuel represented members of the Board of Directors of Masimo against its founder in *Kiani v. Koffey et al.*, Orange County Superior Court Case No. 30-2025-01484637 ("*Kiani v. Koffey*").

140. Plaintiffs are informed and believe, and thereon allege, that Mr. Kiani moved to disqualify Quinn Emanuel as counsel for the Masimo board of directors on the grounds Quinn Emanuel previously represented Mr. Kiani related to his position with Masimo.

141. Plaintiffs are informed and believe, and thereon allege, that the Court in *Kiani v. Koffey*, Judge Thomas J. Lo found Quinn Emanuel's "side-switching" violated the Rules of Professional Conduct and granted the motion to disqualify Quinn Emanuel.

142. Plaintiffs are informed and believe, and thereon allege, that the court's ruling disqualifying Quinn Emanuel in *Kiani v. Koffey* rendered Quinn Emanuel's engagement agreement with the Masimo board illegal and unenforceable.

***5. The Enterprise Continues to Defraud Clients Through the Scheme by which Quinn Emanuel Fraudulently Represents Clients Although it is Conflicted from Doing So***

143. Plaintiffs are informed and believe, and thereon allege, that the Enterprise's scheme is ongoing and is currently being litigated in the United States District Courts for the Northern District of California and the Western District of Texas.

144. Plaintiffs are informed and believe, and thereon allege, that in the matter *Edmundson v. Pagaya Technologies Ltd.*, United States District Court for the Northern District of California Case No. 3:25-cv-06029, defendant Pagaya Technologies Ltd. filed a motion to disqualify Quinn Emanuel as counsel for plaintiff Edmundson because Quinn Emanuel advised Pagaya Technologies Ltd. on non-compete and non-solicitation provisions for its employees, including Edmundson, but is now representing Edmundson in his lawsuit over his termination from Pagaya Technologies Ltd. Plaintiffs are informed and believe that Pagaya Technologies Ltd. claims this creates a direct and incurable conflict for Quinn Emanuel. Plaintiffs are informed and believe, and thereon allege, the motion has been briefed but the Court has not yet entered an order.

145. Plaintiffs are informed and believe, and thereon allege, that in the matter *Techtronic Industries Co. v. Muddy Waters Capital LLC*, United States District Court for the Western District of Texas Case No. 1:25-cv-00249, defendant Muddy Waters Capital LLC moved to disqualify Quinn Emanuel on the grounds the firm represented Muddy Waters Capital LLC and its found and affiliates during short-seller investigations by the Department of Justice and Securities Exchange Commission and then began representing plaintiff Techtronic Industries Co. in a

substantially related libel suit against Muddy Waters Capital LLC. Plaintiffs are informed and believe, and thereon allege, the motion has been briefed but the Court has not yet entered an order.

**FIRST CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(All Plaintiffs against Defendants Quinn Emanuel Urquhart & Sullivan, LLP, Anthony Alden, and Robert Schwartz)**

146. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

147. Ms. Mah, Mahway Inception 1, and Mahway Management retained Quinn Emanuel and attorneys Alden and Schwartz as their legal counsel on or around April 1, 2025. That same day, Alden and Schwartz of Quinn Emanuel started charging Ms. Mah, Mahway Inception 1, and Mahway Management for legal services. The next day, April 2, 2025, other attorneys at Quinn Emanuel started working on behalf of Ms. Mah, Mahway Inception 1, and Mahway Management, including Quinn Emanuel attorney Maria Mortenson. Through late April and early May, Quinn Emanuel, through numerous attorneys working for and on behalf of Quinn Emanuel (including Alden, Schwartz, Mortenson, Casey, Concannon, Machavoine, Marro, Vorburger, Wolfe, Paul Dacier, Danielle Gilmore, Delaney Gold-Diamond, Mauni Jalali, Emily Kapur, Ryan S. Landes, and Scott Schlafer) started representing Ms. Barrica; Mahway Inception 2, LLC; Mahway Inception II Class B Holdings, LLC; Mahway Investment Group, LLC; Mahway Consulting LLC; Mah Family IDF; and Thortus LLC.

148. This retention created a fiduciary relationship between Quinn Emanuel, and its attorneys, Alden, and Schwartz, on the one hand, and Plaintiffs, on the other hand, pursuant to which Quinn Emanuel and its attorneys, Alden, and Schwartz, and each of them, owed duties to Plaintiffs including, but not limited to, the duty to use

reasonable care, the duty of undivided loyalty, the duty of good faith, and the duty to disclose.

149. Quinn Emanuel and its attorneys, Alden, and Schwartz and each of them, breached these duties in numerous ways, including, but not limited to, failing to disclose conflicts of interest related to representing Caldbeck in the sexual harassment and misconduct claims that serve as the basis for the pattern of sexual misconduct at issue in Plaintiffs' complaints against Caldbeck, misrepresenting Quinn Emanuel's prior representation of Caldbeck for their own financial benefit to the tune of nearly $2,000,000 billed to Plaintiffs for work related to Caldbeck, affirmatively hiding the conflicted representation from Caldbeck and the mediator, failing and refusing to provide objective analysis regarding whether Quinn Emanuel would likely be disqualified in matters against Caldbeck related to his history of sexual misconduct, partaking in activities adverse to the interests of Plaintiffs including excessively billing nearly $2,000,000.00 in less than four months despite Plaintiffs' express instructions to keep billing to a minimum.

150. As a proximate result of the breaches of fiduciary duty by Quinn Emanuel and its attorneys, Alden, and Schwartz, and each of them, Plaintiffs have suffered damages in an amount to be proven at trial but at least $514,779.00.

151. Quinn Emanuel, Alden, and Schwartz, and each of them, acted with a deliberate and conscious disregard for Plaintiffs' rights, constituting oppression, fraud, or malice, to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

## (LEGAL MALPRACTICE / PROFESSIONAL NEGLIGENCE)

## (All Plaintiffs against Defendants Quinn Emanuel Urquhart & Sullivan, LLP, Anthony Alden, and Robert Schwartz)

152. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

153. Ms. Mah, Mahway Inception 1, and Mahway Management retained Quinn Emanuel and attorneys Alden and Schwartz as their legal counsel on or around April 1, 2025. That same day, Alden and Schwartz of Quinn Emanuel started charging Ms. Mah, Mahway Inception 1, and Mahway Management for legal services. The next day, April 2, 2025, Mortenson, other attorneys at Quinn Emanuel started working on behalf of Ms. Mah, Mahway Inception 1, and Mahway Management. On or before May 19, 2025, Ms. Barrica; Mahway Inception 2, LLC; Mahway Inception II Class B Holdings, LLC; Mahway Investment Group, LLC; Mahway Consulting LLC; Mah Family IDF; and Thortus LLC retained Quinn Emanuel and its attorneys, Alden, and Schwartz as their legal counsel. On or before May 19, 2025, Quinn Emanuel and its attorneys, Alden, Schwartz, and each of them, worked on behalf of Plaintiffs, and each of them.

154. Pursuant to that representation, Quinn Emanuel and its attorneys, Alden, and Schwartz, and each of them, owed Plaintiffs a duty to use such skill and care as a reasonably careful attorney would use in similar circumstances.

155. Quinn Emanuel and its attorneys, Alden, and Schwartz, and each of them, failed to meet this standard of care in numerous ways, including, but not limited to, failing to appreciate allegations in the various complaints would likely elicit anti-SLAPP motions to strike that a reasonably careful attorney would identify and appreciate under similar circumstances, failing to identify conflicts of interest related to representing Caldbeck in the sexual harassment and misconduct claims that serve as the basis for the pattern of sexual misconduct at issue in Plaintiffs' complaints against Caldbeck that a reasonably careful attorney would identify under similar circumstances, failing to engage in or communicate analysis regarding whether Quinn Emanuel would likely be disqualified in matters against Caldbeck related to his history of sexual misconduct that a reasonably careful attorney would engage in and communicate under similar circumstances, failing to comply with ethical obligations attorneys owe to clients that a reasonably careful attorney would

comply with under similar circumstances.

156. As a proximate result the failures to meet the standard of care by Quinn Emanuel, Alden, and Schwartz, and each of them, Plaintiffs have suffered damages in an amount to be proven at trial but at least $514,779.00.

## THIRD CAUSE OF ACTION

## RESCISSION

**(All Plaintiffs Against Defendant Quinn Emanuel Urquhart & Sullivan, LLP)**

157. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

158. Plaintiffs and Quinn Emanuel entered into a contract for Quinn Emanuel and its attorneys to represent Plaintiffs; specifically, the Original EA and the Revised EA.

159. The Original EA and the Revised EA are unlawful and thus unenforceable because they are contrary to an express provision of law or to contrary to the policy of express law. More particularly, the Original EA and Revised EA are illegal contracts because Quinn Emanuel's representation of Plaintiffs violate the California Rules of Professional Conduct, including but not limited to rules 1.7, 1.9 and 1.10, and thus violate the binding rules governing the ethical practices of law in the State of California that serve as an expression of public policy to protect the public, including Plaintiffs.

160. The consent of Plaintiffs to the Original EA and the Revised EA was given by mistake or obtained through fraud or exercised by or with the connivance of Quinn Emanuel, on its own and acting through Alden, Schwartz, Doolittle, and Olivar, who failed to provide adequate notice of Quinn Emanuel's conflicted representation and failed to request, let alone obtain informed written consent from Plaintiffs or from Caldbeck for the conflicted representation, and actively hid Quinn Emanuel's representation of Plaintiffs from Caldbeck and the mediator.

161. The consideration provided by Quinn Emanuel, Alden, and Schwartz, and each of them, fails, in whole or in part, through the fault of Quinn Emanuel, Alden, and Schwartz, and each of them, because Quinn Emanuel was conflicted and knew it was conflicted in representing Plaintiffs against Caldbeck, but failed and refused to request, let alone obtain, informed written consent from Plaintiffs or from Caldbeck for this conflicted representation. Indeed, Quinn Emanuel affirmatively tried to hide its representation of Plaintiffs from Caldbeck.

162. The contract is unlawful for causes which do not appear in its terms or conditions, but rather because Quinn Emanuel, Alden, and Schwartz, and each of them, violated their rules governing the ethical practice of law in the State of California.

163. The public interest will be prejudiced by permitting the Original EA or the Revised EA to stand where Quinn Emanuel represented Caldbeck defending against the same sexual assault and sexual harassment claims that make up the pattern of sexual assault and sexual harassment at issue in Plaintiffs' claims against Caldbeck.

164. Plaintiffs are entitled to restitution based on the unilateral rescission of the Original EA and Revised EA and thus are entitled recover the $200,000.00 advance fee deposit Ms. Mah paid to Quinn Emanuel.

## FOURTH CAUSE OF ACTION

## COMMON COUNT FOR MONEY HAD AND RECEIVED

**(Plaintiffs Jessica Mah, Mahway Inception 1, LLC, and Mahway Management, LLC Against Defendant Quinn Emanuel Urquhart & Sullivan, LLP)**

165. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

166. Quinn Emanuel received money that was intended to be sued for the benefit of plaintiffs Ms. Mah, Mahway Inception 1, and Mahway Management;

specifically, the $200,000.00 Ms. Mah paid to Quinn Emanuel in early 2025 in exchange for Quinn Emanuel acting as attorneys for Ms. Mah, Mahway Inception 1, and Mahway Management.

167. The money was not used for the benefit of Ms. Mah, Mahway Inception 1, and Mahway Management.

168. Quinn Emanuel has not given the money to Ms. Mah, Mahway Inception 1, or Mahway Management. On the contrary, Quinn Emanuel demanded *more* money from Plaintiffs.

169. Ms. Mah, Mahway Inception 1, and Mahway Management are entitled to a return of the $200,000.00 paid to Quinn Emanuel that was meant to be used for the benefit of Ms. Mah, Mahway Inception 1, and Mahway Management.

**FIFTH CAUSE OF ACTION**

**(FRAUD)**

**(All Plaintiffs Against Defendants Quinn Emanuel Urquhart & Sullivan, LLP and Anthony Alden)**

170. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

171. On March 30, 2025, Alden, individually and on behalf of Quinn Emanuel, represented in an email to Ms. Mah's agent, Alex Garden, that, "In the interest of full disclosure, two of my NorCal Partners represented Mr. Caldwell [sic] several years ago, but the matter seems to be unrelated and should not pose a problem for this one," regarding Quinn Emanuel possibly representing Ms. Mah in a dispute with Justin Caldbeck concerning sexual harassment and sexual assault claims. Mr. Garden replied to Alden's email and included Alden's representations with a copy to Ms. Mah. Ms. Mah joined the email chain.

172. On April 1, 2025, Quinn Emanuel, through Alden, represented in writing in the Original EA that, "we have previously represented Mr. Caldbeck but

believe the subject of that representation to be unrelated to the subject of the Engagement."

173. Similarly, on May 19, 2025, Quinn Emanuel, through Alden, again represented in writing—this time in the Revised EA—that, "we have previously represented Mr. Caldbeck but believe the subject of that representation to be unrelated to the subject of the Engagement."

174. The March 30, 2025 representation by Alden, individually and on behalf of Quinn Emanuel, that Quinn Emanuel's prior representation of Caldbeck was "unrelated and should not pose a problem for this one" was false. Similarly, the April 1, 2025, and May 19, 2025 representations by Quinn Emanuel, through Alden, that Quinn Emanuel's prior representation of Caldbeck was "unrelated to the subject of the Engagement" was false.

175. Alden and Quinn Emanuel knew the March 30, 2025 representation that Quinn Emanuel's prior representation of Caldbeck was "unrelated and should not pose a problem for this one" was false when made. Indeed, in April 2025, Quinn Emanuel affirmatively tried to hide from Caldbeck that Quinn Emanuel represented Ms. Mah in her dispute against Caldbeck. Similarly, Quinn Emanuel and Alden knew the April 1, 2025, and May 19, 2025 representations that Quinn Emanuel's prior representation of Caldbeck was "unrelated to the subject of the Engagement" were false when made.

176. Alden and Quinn Emanuel made these misrepresentations with the intent to induce Ms. Mah and Plaintiffs to hire Quinn Emanuel to represent them in legal matters against Caldbeck and his co-conspirators related to Caldbeck's sexual assault and sexual harassment against Ms. Mah and Ms. Barrica and Caldbeck's established pattern of sexual misconduct and the related defamation, extortion, and other misconduct by Caldbeck, Delph, Mulholland, and their co-conspirators.

177. Ms. Mah and Plaintiffs justifiably relied on Alden's and Quinn Emanuel's representations because Alden and Quinn Emanuel made these

representations in writing, including in the Original EA and the Revised EA. Ms. Mah and Plaintiffs further justifiably relied on Alden's and Quinn Emanuel's representations because Alden and Quinn Emanuel, but not Plaintiffs, had access to information about Quinn Emanuel's prior representation of Caldbeck. Ms. Mah and Plaintiffs further justifiably relied on Alden's and Quinn Emanuel's representations because Plaintiffs hired Quinn Emanuel and Alden as their attorneys and implicitly trusted them with the expectation that Alden and Quinn Emanuel would act in the best interests of Ms. Mah and Plaintiffs.

178. Ms. Mah and Plaintiffs were harmed as a result of their justifiable reliance on Alden's and Quinn Emanuel's intentional misrepresentations in an amount to be proven at trial, but at least $514,779.00.

179. Quinn Emanuel and Alden, and each of them, acted with a deliberate and conscious disregard for Plaintiffs' rights, constituting oppression, fraud, or malice, to justify an award of exemplary and punitive damages.

## SIXTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(All Plaintiffs against Defendants Quinn Emanuel Urquhart & Sullivan, LLP and Anthony Alden)**

180. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

181. On March 30, 2025, Alden, individually and on behalf of Quinn Emanuel, represented in an email to Ms. Mah's agent, Alex Garden, that, "In the interest of full disclosure, two of my NorCal Partners represented Mr. Caldwell [sic] several years ago, but the matter seems to be unrelated and should not pose a problem for this one," regarding Quinn Emanuel possibly representing Ms. Mah in a dispute with Justin Caldbeck concerning sexual harassment and sexual assault claims. Mr. Garden replied to Alden's email and included Alden's representations

with a copy to Ms. Mah. Ms. Mah joined the email chain.

182. On April 1, 2025, Quinn Emanuel, through Alden, represented in writing in the Original EA that, "we have previously represented Mr. Caldbeck but believe the subject of that representation to be unrelated to the subject of the Engagement."

183. Similarly, on May 19, 2025, Quinn Emanuel, through Alden, again represented in writing—this time in the Revised EA—that, "we have previously represented Mr. Caldbeck but believe the subject of that representation to be unrelated to the subject of the Engagement."

184. The March 30, 2025 representation by Alden, individually and on behalf of Quinn Emanuel, that Quinn Emanuel's prior representation of Caldbeck was "unrelated and should not pose a problem for this one" was false. Alden, individually and on behalf of Quinn Emanuel, had no reasonable grounds for believing this representation was true when made. Similarly, the April 1, 2025, and May 19, 2025 representations by Quinn Emanuel, through Alden, that Quinn Emanuel's prior representation of Caldbeck was "unrelated to the subject of the Engagement" was false.

185. Alden and Quinn Emanuel lacked reasonable grounds for the March 30, 2025 representation that Quinn Emanuel's prior representation of Caldbeck was "unrelated and should not pose a problem for this one." Quinn Emanuel and Alden lacked reasonable grounds for the April 1, 2025, and May 19, 2025 representations that Quinn Emanuel's prior representation of Caldbeck was "unrelated to the subject of the Engagement."

186. Alden and Quinn Emanuel made these misrepresentations with the intent to induce Ms. Mah and Plaintiffs to hire Quinn Emanuel to represent them in legal matters against Caldbeck and his co-conspirators related to Caldbeck's sexual assault and sexual harassment against Ms. Mah and Ms. Barrica and Caldbeck's established pattern of sexual misconduct and the related defamation, extortion, and

other misconduct by Caldbeck, Delph, Mulholland, and their co-conspirators.

187. Ms. Mah and Plaintiffs justifiably relied on Alden's and Quinn Emanuel's representations because Alden and Quinn Emanuel made these representations in writing, including in the Original EA and the Revised EA. Ms. Mah and Plaintiffs further justifiably relied on Alden's and Quinn Emanuel's representations because Alden and Quinn Emanuel, but not Plaintiffs, had access to information about Quinn Emanuel's prior representation of Caldbeck. Ms. Mah and Plaintiffs further justifiably relied on Alden's and Quinn Emanuel's representations because Plaintiffs hired Quinn Emanuel and Alden as their attorneys and implicitly trusted them with the expectation that Alden and Quinn Emanuel would act in the best interests of Ms. Mah and Plaintiffs.

188. Ms. Mah and Plaintiffs were harmed as a result of their justifiable reliance on Alden's and Quinn Emanuel's misrepresentations in an amount to be proven at trial but at least $514,779.00.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF THE UNFAIR COMPETITION LAW

## (BUS. & PROF. CODE § 17200 *ET SEQ.*)

**(All Plaintiffs Against Defendants Quinn Emanuel Urquhart & Sullivan, LLP, Anthony Alden, and Robert Schwartz)**

189. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

190. Plaintiffs are informed and believe, and thereon allege, that defendants Quinn Emanuel, Alden, and Schwartz, and each of them, engage in business acts or practices of representing clients without properly disclosing conflicts with current or former clients and without obtaining written waivers of those conflicts from the affected clients.

191. Plaintiffs are informed and believe, and thereon allege, that defendants

Quinn Emanuel, Alden, and Schwartz, and each of them, engage in business acts or practices of misrepresenting to clients their prior or current representation of other clients that caused conflicts with current or former clients.

192. Plaintiffs are informed and believe, and thereon allege, that defendants Quinn Emanuel, Alden, and Schwartz, and each of them, engage in business acts or practices of representing clients in violation of California Rules of Professional Conduct 1.7, 1.9, and 1.10.

193. Plaintiffs suffered an injury as a result of the business practices of Quinn Emanuel, Alden, and Schwartz, and each of them, because, among other things, Plaintiffs paid Quinn Emanuel fees for legal services provided by Quinn Emanuel, Alden, and Schwartz, despite their conflicts and failure to obtain written waivers.

194. Plaintiffs are entitled to restitution for the $200,000.00 they paid to Quinn Emanuel.

195. An injunction should issue precluding Quinn Emanuel, Alden, and Schwartz from engaging in conflicted representation in violation of California Rules of Professional Conduct 1.7, 1.9, and 1.10.

## EIGHTH CAUSE OF ACTION

## CIVIL RICO – VIOLATIONS OF 18 U.S.C. § 1961 ET SEQ. RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

**(All Plaintiffs Against Defendants Quinn Emanuel Urquhart & Sullivan, LLP, Anthony Alden, and Robert Schwartz)**

196. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

197. Defendants Quinn Emanuel, Alden, and Schwartz are all members of the Enterprise and liable for violations of the Racketeer Influenced and Corrupt Organizations Act (the "Act") pursuant to 18 U.S.C. section 1962, subdivisions (a)

through (c).

198. Generally, defendants Quinn Emanuel, Alden, and Schwartz, through a series of coordinated, predicate acts, commencing in or around 2019 and continuing through the present, have engaged in the following list of unlawful conduct proscribed under the Act:

a. Wire fraud (18 U.S.C. § 1343) –

i. Through unauthorized transfer of stolen funds via wire transfer from California-based bank accounts set up in the name of Quinn Emanuel to accounts controlled and maintained by Quinn Emanuel and other members of the Enterprise based out of state (including in New York, Washington, D.C., and internationally in Switzerland) to compensate members of the Enterprise residing in locations with funds extracted through illegal and unenforceable contracts with clients that Quinn Emanuel is ethically prohibited from representing.

ii. Through electronic communications (transmitted interstate, including to members of the Enterprise residing in New York, Washington, D.C., and internationally in Switzerland) designed to defraud Plaintiffs and other current and former clients of Quinn Emanuel. Such correspondence is designed to impersonate conflict checks and information requests about matters and clients that Quinn Emanuel and its lawyers, including members of the Enterprise, then represented or previously represented as attorneys.

iii. Through electronic communications (transmitted interstate, including to persons and members of the Enterprise residing without limitation in New York, Washington, D.C., and

internationally in Switzerland) designed to represent invoicing for legal services conducted by Quinn Emanuel and its attorneys for Plaintiffs despite that Quinn Emanuel and individual members of the Enterprise, including Alden, Schwartz, Olivar, Doolittle, and Tayback, knew Quinn Emanuel was conflicted from representing Plaintiffs against Caldbeck and knew that the Original EA and Revised EA were illegal contracts.

iv. Through electronic communications designed to represent a demand for $1,707,181.96 for legal services purportedly conducted by Quinn Emanuel and its attorneys for Plaintiffs despite that Quinn Emanuel and individual members of the Enterprise, including Alden, Schwartz, Olivar, Doolittle, and Tayback, knew Quinn Emanuel was conflicted from representing Plaintiffs against Caldbeck and knew that the Original EA and Revised EA were illegal contracts.

b. Mail fraud (18 U.S.C. § 1341) – through a scheme to defraud Plaintiffs by causing to be deposited in the mail legal invoices and correspondence related to Quinn Emanuel and its attorneys representing Plaintiffs despite that Quinn Emanuel and individual members of the Enterprise, including Alden, Schwartz, Olivar, Doolittle, and Tayback, knew Quinn Emanuel was conflicted from representing Plaintiffs against Caldbeck and knew that the Original EA and Revised EA were illegal contracts for which Quinn Emanuel could not charge Plaintiffs.

c. Transportation of stolen money in excess of $5,000 in interstate commerce (including from California to New York, to Washington, D.C., and internationally to Switzerland) obtained by the Enterprise

through illegal and unenforceable contracts, including the Original EA and Revised EA, to compensate members of the Enterprise residing in various locations and the transfer of more than $5,000 as part of a scheme and artifice to defraud (18 U.S.C. §§ 2314-2315).

199. Each of the members of the Enterprise, including Quinn Emanuel, Alden, and Schwartz, have participated directly or indirectly, in the pattern of racketeering activity described above.

200. Each of the members of the Enterprise, including Quinn Emanuel, Alden, and Schwartz, engaged in and conducted activities that affect interstate commerce.

201. Each of the members of the Enterprise, including Quinn Emanuel, Alden, and Schwartz, agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs, engaging in wire fraud, engaging in mail fraud, and transportation of stolen money, as detailed herein.

202. The acts set forth in the preceding paragraphs constitute a pattern of racketeering activity as defined in 18 U.S.C. section 1961(5).

203. Defendants Quinn Emanuel, Alden, and Schwartz have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity described above and herein, in violation of 18 U.S.C. section 1962.

204. As alleged above, Quinn Emanuel, Alden, and Schwartz, associating with one another through the Enterprise, knowingly formed a scheme that used the mails and wires of the United States with the specific intent to deceive or defraud Plaintiffs, engage in wire fraud, engage in mail fraud, and transport stolen money (the predicate acts).

205. Defendants Quinn Emanuel, Alden, and Schwartz, associating with one another through the Enterprise, knowingly employed and perpetuated the

aforementioned related scheme continuously and repeatedly over the course of the years 2019-2026.

206. The acts of defendants Quinn Emanuel, Alden, and Schwartz were achieved through each working together for the aforementioned ends and their interrelationship with one another is both formal (in many cases, as equity partners in or attorneys working for Quinn Emanuel) as well as informal and through the Enterprise, with a shared goal of furthering their common illegal interest in order to divert funds and property to their scheme and the deception of the public.

207. Defendants Quinn Emanuel, Alden, and Schwartz intended to commit the predicate acts described herein despite having knowledge that those acts were illegal. Indeed, Plaintiffs are informed and believe, and thereon allege, that multiple Courts have already disqualified Quinn Emanuel as counsel based on conflicts arising from the firm concurrently or previously representing parties against which Quinn Emanuel was litigating.

208. The illegal acts of defendants Quinn Emanuel, Alden, Schwartz patently have had an effect on interstate commerce, given the diversion of funds, the multi-state and international representation.

209. As a direct and proximate cause of the racketeering activities and violations of 18 U.S.C. section 1962 by Quinn Emanuel, Alden, and Schwartz through the Enterprise, Plaintiffs have been injured in business and property in that Plaintiffs suffered pecuniary loss in an amount to be determined at trial, and which currently exceeds $514,779.00, consisting of the $200,000.00 fee deposit Ms. Mah made to Quinn Emanuel, $27,000 fee award against Ms. Barrica related to the anti-SLAPP in the *Barrica v. Caldbeck* case, and $211,804.00 incurred by Ms. Barrica and Ms. Mah to oppose Caldbeck's anti-SLAPP motions in the *Barrica v. Caldbeck* and *Mah v. Caldbeck* matters that Quinn Emanuel commenced by drafting and filing complaints, and $75,975.00 Plaintiffs incurred defending against Quinn Emanuel's claims in the mandatory fee arbitration.

**NINTH CAUSE OF ACTION**

**CONSPIRACY TO COMMIT CIVIL RICO IN VIOLATION OF 18 U.S.C. SECTION 1962(d)**

**(All Plaintiffs Against Defendants Quinn Emanuel Urquhart & Sullivan, LLP, Anthony Alden, Robert Schwartz)**

210. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs in this Complaint, above, as if fully set forth and re-alleged here.

211. Defendants Quinn Emanuel, Alden, and Schwartz are each are liable for the violation of the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. section 1962, subdivision (d) for conspiring to violate those acts referenced under the Eighth Claim for Relief and performing a number of overt acts in furtherance of the conspiracy. Defendants Quinn Emanuel, Alden, and Schwartz agreed and conspired to violate 18 U.S.C. section 1962, subdivision (c) by conducting and participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

212. Defendants Quinn Emanuel, Alden, and Schwartz have intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity. Defendants Quinn Emanuel, Alden, and Schwartz knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above. That conduct constitutes a conspiracy to violate 18 U.S.C. section 1962(c) in violation of 18 U.S.C. section 1962(d).

213. As a direct and proximate cause of this conspiracy, the overt acts taken in furtherance of the conspiracy, and violations of 18 U.S.C. section 1962(d), Plaintiffs have been injured in their business or property in that they has suffered pecuniary loss in an amount to be determined at trial, but at least $514,779.00, consisting of the $200,000.00 fee deposit Ms. Mah made to Quinn Emanuel,

$27,000 fee award against Ms. Barrica related to the anti-SLAPP in the *Barrica v. Caldbeck* case, and $211,804.00 incurred by Ms. Barrica and Ms. Mah to oppose Caldbeck's anti-SLAPP motions in the *Barrica v. Caldbeck* and *Mah v. Caldbeck* matters that Quinn Emanuel commenced by drafting and filing complaints, and $75,975.00 Plaintiffs incurred defending against Quinn Emanuel's claims in the mandatory fee arbitration.

214. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages, plus costs and attorneys' fees from Quinn Emanuel, Alden, and Schwartz in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendants, and each of them, as follows:

1. Rescission of the Original EA and of the Revised EA;
2. General and consequential damages in an amount to be determined in accordance with proof at trial, but at least $514,779.00;
3. Special damages in an amount to be proven at trial;
4. Attorneys' fees and costs of suit by contract and by statute;
5. Pre-judgment and post-judgment interest as allowed by law;
6. Exemplary and punitive damages;
7. Treble damages by statute;
8. Restitution;
9. Injunctive relief; and
10. Such other and further relief as the Court may deem as just and proper.

Dated: August 24, 2026

**ENENSTEIN PHAM GLASS GUTENPLAN & BOLLING LLP**

By: [signature]
Matthew W. Rosene
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all matters triable by jury.

Dated: August 24, 2026

**ENENSTEIN PHAM GLASS GUTENPLAN & BOLLING LLP**

By: ____________________________
Matthew W. Rosene
Attorneys for Plaintiffs